UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Rhonda Boone, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | 18-cv-1771 |
| v. | ) ) ) | Judge Charles P. Kocoras |
| MB Financial Bank, N.A., | ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

Before the Court is Defendant MB Financial Bank, N.A.'s ("MB Financial") Motion to Dismiss Plaintiff Rhonda Boone's ("Boone") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants the motion.

## **FACTUAL BACKGROUND**

The following facts are taken from Boone's complaint and are assumed to be true for purposes of this motion. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). The Court draws all reasonable inferences in Boone's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

MB Financial is a national bank with its United States headquarters and principal place of business in Chicago, Illinois. MB Financial's banking services include the issuance of debit cards associated with its customers' checking accounts. The debit

cards allow MB Financial's customers to have electronic access to their checking accounts for purchases, payments, withdrawals, and other electronic debit transactions. Boone is an Illinois citizen who has an account and debit card with MB Financial.

### A. MB Financial's Debit Card Transaction Procedure

Boone alleges that MB Financial maintains a running account balance in real time, tracking funds consumers have for immediate use. This running account balance is adjusted, in real-time, to account for debit card transactions at the precise instant they are made. When a customer makes a purchase with a debit card, MB Financial sequesters the funds needed to pay the transaction, subtracting the dollar amount of the transaction from the customer's account balance. The sequestered funds are not available for any other use by the customer. At a later point, which can be several days after the transaction, the sequestered funds are transferred from the customer's account to the merchant's account, a process known as settling.

### B. The Underlying Action

Boone's alleges that from 2015 to 2017, MB Financial assessed her overdraft ("OD") fees in purported violation of its checking agreement and Illinois law. In asserting her claim, Boone relies on the "Overdraft Disclosure" and "Fee Schedule" (collectively, the "Checking Agreements"). The Overdraft Disclosure states:

> An overdraft occurs when you do not have enough money available in your account to cover a transaction, but we pay it anyway.
>
> Our standard overdraft practice comes with your account and allows us to use our discretion when paying items that will overdraw your account.

ATM or everyday debit card transactions that overdraw your account may be declined, unless you sign up for Guard My Card, a service that, at our discretion, pays these types of transactions (overdraft related fees apply). If your transaction is declined, no fee is charged.

* * *

The Fee Schedule states:

Insufficient Funds and Overdraft Related Fees Overdraft Fee (PD NSF / OD or Paid UCF / DR) $37 per time.

Returned Item Fee (Ret NSF / OD or Ret UCF / DR) $37 per item.

These fees are not charged unless your account is negative by more than $10 and will be deducted from the account the business day following the overdraft. A combined maximum of 5 overdraft and returned item fees are charged per day. The overdraft fee does not apply to ATM and everyday debit card transactions unless you have requested Guard My Card authorizing MB to pay these types of transactions.

To determine your available balance, subtract (1) deposits that are not yet available for withdrawal under our Funds Availability Policy, (2) debit card or other transactions that we are legally obligated to pay or have already paid out in cash, (3) other pending transactions such as ACH transactions, and (4) any holds on your balance, such as holds on funds to comply with court orders or other legal requirements.

Boone challenges three aspects of MB Financial's OD fees. Boone's first challenge is predicated on MB Financial's assessment of OD fees on certain debit-card related transactions. Specifically, she alleges that when a customer makes a purchase using a debit card, MB Financial tentatively approves the transaction and purportedly "sequesters" an amount of funds from the customer's account to cover the transaction while it remains pending. If the customer's account has a negative balance on the date of settling due to intervening charges that settle sooner than the challenged transaction,

3

MB Financial charges an OD fee on the challenged transaction ("Authorize Positive, Purportedly Settle Negative," or "APPSN"). Boone alleges that because MB Financial "sequesters" funds in the checking account at the time of purchase for the debit card transactions, an assessment of an OD fee on an APPSN transaction violates MB Financial's contractual obligations.

Boone's second claim challenges MB Financial's assessment of the Continuous Daily Overdraft fee ("CDOF"). A CDOF "is charged beginning on the second consecutive calendar day the account is negative by more than $10." Boone claims this language prevents MB Financial from assessing CDOF "until two full calendar days after the day an account goes negative."

Boone's third claim challenges MB Financial's discretion over whether to pay an overdraft fee. Boone argues that MB Financial has abused its discretion by charging too many overdraft fees, in effect maximizing its profits.

On March 12, 2018, Boone filed her three-count putative class action complaint against MB Financial, alleging: (1) breach of contract stemming from her APPSN and CDOF claims; (2) breach of implied covenant of good faith and fair dealing; and (3) Illinois Consumer Fraud and Deceptive Business Practice Act. On July 13, 2018, MB Financial filed the instant motion under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. MB Financial seeks dismissal of all three counts.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs need not provide detailed factual allegations, but must provide enough factual support to raise their right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow…the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the…claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I. Illinois Law Applies

As an initial matter, the parties agree that Illinois law applies in this case and there is no reason for the Court to conclude otherwise. Therefore, the Court will apply Illinois law in the underlying dispute.

## II. Breach of Contract Claims

In Count I, Boone alleges that MB Financial breached the Checking Agreements by improperly charging OD fees on APPSN transactions and CDOF on the day after an account incurs an overdraft fee. To adequately plead a breach of contract claim under Illinois law, Boone must establish: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resulting injury to the plaintiff." *Applied Indus. Material Corp. v. Mallinckrodt, Inc.*, 102 F. Supp. 2d 934, 937 (N.D. Ill. 2000) (citing *Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192 (1999)).

A valid and enforceable contract requires definite and certain meanings of the essential terms. *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 515 N.E.2d 61, 65 (Ill. 1987). A contract is definite and certain if the parties' intent is readily ascertainable from the agreement. *Id*. The contractual language itself determines the parties' intent, and the entire contract must be viewed as a whole. *Gallagher v. Lenart*, 226 Ill.2d 208, 232, 874 N.E.2d 43 (Ill. 2007). When a contract is clear and unambiguous, the words "must be given their plain, ordinary and popular meaning." *Thompson v. Gordon*, 948 N.E.2d 39 (Ill. 2011). However, when "the words in a contract are reasonably susceptible to more than one meaning, they are ambiguous." *Id.* If a contract is ambiguous, its interpretation is a question of fact and survives a motion to dismiss. *Quake Const., Inc. v. American Airlines, Inc.*, 565 N.E.2d 990 (Ill. 1990). However, if

a contract unambiguously answers the issue raised by a party, the court gives effect to the written contract. *Id.*

Before diving into Boone's breach of contract claims, the Court notes that for purposes of this motion, Boone has sufficiently alleged for both claims the existence of a valid and enforceable contract, Boone's performance and subsequent injury. Therefore, the sole issue we must evaluate is whether Boone has sufficiently alleged that MB Financial breached the Checking Agreements. We evaluate each claim in turn.

### A. APPSN Transactions

Boone's first breach of contract claim alleges that MB Financial improperly assesses OD fees on APPSN transactions. Boone alleges MB Financial breached the terms of their Checking Agreements by charging OD fees on transactions that were authorized as sufficient funds, but whose available balances were allegedly insufficient at the time the transaction settled. MB Financial alleges the Checking Agreements expressly permit this conduct. We agree.

> Boone invokes the following language to support her position:
>
> An overdraft occurs when you do not have enough money available in your account to cover a transaction, but we pay it anyway.
>
> ATM or everyday debit card transactions that overdraw your account may be declined, unless you sign up for Guard My Card, a service that, at our discretion, pays these types of transactions (overdraft related fees apply). If your transaction is declined, no fee is charged.
>
> To determine your available balance, subtract (1) deposits that are not yet available for withdrawal under our Funds Availability Policy, (2) debit card or other transactions that we are legally obligated to pay or have

7

already paid out in cash, (3) other pending transactions such as ACH transactions, and (4) any holds on your balance, such as holds on funds to comply with court orders or other legal documents.

Boone alleges that MB Financial's assessment of OD fees on APPSN Transactions are inconsistent with the underlying language. Specifically, Boone first claims that the underlying language allows MB Financial to solely assess OD fees on transactions with insufficient available funds to pay a given transaction and that the bank will immediately deduct or place a hold on her funds for such transactions. However, we agree with MB Financial's assertion that this occurs when an APPSN transaction is presented for settlement. On the date MB Financial pays the transactions – the settlement date – there are "insufficient available funds" because the customer in the interim has chosen to make additional, intervening payments from her account that caused it to have a negative balance.

Boone next focuses on the Overdraft Disclosure, which states that "[a]n overdraft occurs when you do not have enough money available in your account to cover a transaction, but we pay it anyway." Boone argues that the terms "to cover" and "pay" are ambiguous, preventing dismissal of her claims. We disagree.

Boone first alleges that the term "to cover" cannot reasonably be read to allow OD fees on APPSN transactions, and urges the Court to follow the reasoning adopted in *Lloyd v. Navy Fed. Credit Union*, 2018 WL 1757609, at *7 (S.D. Cal. 2018). In *Lloyd*, the court evaluated whether the term "to cover" was ambiguous in a contract term identical to Boone's. *Id.* The court found the term ambiguous because the

agreements did not "clearly identify how funds sequestered for a transaction authorized with positive funds are to be used when the transaction is paid." *Id.* The court explained that "if the term 'to cover' means that funds sequestered from a positive account balance will be used to pay for the transaction when it settles … no overdraft fee could be charged." *Id.* However, if "the term 'to cover' means that sequestered funds are to be used to pay for the transaction when it settles, then [the defendant] presumably does pay for the transaction, which triggers its contractual authority to assess an overdraft fee on the transaction." *Id.*

Based on *Lloyd*, Boone claims that there are always funds available to "cover" a APPSN transaction because the bank "sequesters" the funds when it approves the debit transaction. However, MB Financial correctly guides us to the Contract's out-of-order payments provision, which states that the bank will pay transactions in a given order and warns customers that "[t]he order in which items are paid is important if there is not enough money in your account to pay all of the items that are presented." The provision, as MB Financial correctly points out, does not suggest that the Bank will use a different payment order or method only for debit card transactions by "sequestering" funds at the time of authorization and then applying the funds at settlement regardless of the intervening changes to the account balance. In fact, the Overdraft Page fails to make any reference to a debit-card transaction or "debit holds." Therefore, we find Boone's argument unavailing and decline to follow the rationale adopted by *Lloyd*.

Boone next alleges that the Checking Agreements fail to clearly define what it means to "pay" an overdraft. Boone argues that "pay[ment]" should be understood to mean the time a debit card transaction is authorized. On the other hand, MB Financial argues that payment means the bank's settlement of the transaction with a merchant. We agree with MB Financial.

To support her interpretation of the term to "pay," Boone relies on *Roberts v. Capital One, N.A.*, 2017 WL 1750445 (S.D.N.Y. 2017). In *Roberts*, the plaintiffs alleged that their account agreements with defendant bank foreclosed the defendant from assessing OD fees if a customer's balance was positive at the time a merchant requested purchase authorization, but negative when the merchant was paid. *Id.* at *3. The Second Circuit evaluated a provision nearly identical to that which Boone disputes here and determined that the term "transaction" could plausibly refer to the consumer's transaction with the merchant or the bank's settlement of the transaction with a merchant. *Id.*

The source of ambiguity in *Roberts* was the contract's "elect to pay" language, which suggested two different payment periods. We find this case distinguishable because the Checking Agreements do not state than an OD is created when MB Financial "decides to pay" or "elects to pay a transaction." Instead, the Checking Agreements unambiguously provide that an OD occurs when MB Financial pays, and not merely authorizes, an amount in excess of Boone's available balance. Therefore,

we find that the Checking Agreements unambiguously support MB Financial's interpretation.

Boone next argues that the phrase "ATM or everyday debit card transactions that overdraw your account" prohibits the assessment of OD fees on APPSN transactions. Boone interprets this phrase as a clear indication that whether a transaction "overdraws" the account is made at the time Bank decides whether to pay or decline a transactions, which for electronic, immediate debit transactions can only occur at the time of authorization. However, we agree with MB Financial that this provision merely explains that MB Financial may decline to authorize debit card transactions where the account does not have a sufficient balance to pay the transaction. The phrase does not articulate whether MB Financial will charge an OD fee if it approves a debit card transaction that then overdraws the account.

Boone next points to the Fee Schedule, which states that "[t]o determine your available balance, subtract (1) deposits that are not yet available for withdrawal under our Funds Availability Policy, (2) debit card or other transactions that we are legally obligated to pay or have already paid out in cash." Boone interprets this language to mean two things: (1) for purposes of determining OD fees, MB Financial will use the "available balance," which itself is a real-time, running balance that is immediately adjusted when a debit card transaction is authorized; and (2) MB Financial is "legally obligated to pay" pending debit card transactions once they are authorized. Again, we find Boone's assertions unavailing because MB Financial correctly points out that the

Fee Schedule explains how to determine the available balance for purchases subsequent to a debit card transaction. Indeed, we find that the Fee Schedule does not articulate that an OD is assessed at any time other than settlement.

Accordingly, we find that that Boone has failed to sufficiently plead a breach of contract claim on her APPSN assertions because the Checking Agreements are unambiguous and expressly permit MB Financial's conduct. Therefore, MB Financial's motion to dismiss Boone's APPSN claim is granted.

**B.     CDOF Fees**

Boone next alleges that MB Financial prematurely charges her CDO Fees. Specifically, Boone claims that MB Financial breached the Checking Agreements by charging CDO fees before the expiration of two business days. MB Financial argues the Checking Agreements expressly permit this conduct. We agree.

The Fee Schedule assesses a $6.50 CDO Fee if an account balance is negative for two days. The Fee Schedule states, in relevant part:

> Continuous Day Overdraft … This fee is charged beginning on the second consecutive calendar day the account is negative by more than $10.

Boone interprets this provision to mean that MB Financial is unable to assess the CDO fee until two full calendar days after an account goes negative. In reaching this erroneous assertion, Boone argues: (1) "[I]n our legal system and in our culture more broadly, counting begins on the day after a triggering event;" and (2) MB Financial should begin counting on the day after the overdraft because MB Financial does not

determine initial overdrafts until the end of the business day and assesses OD fees on the day after the overdraft transaction has posted.

We find the Fee Schedule's language unambiguous and straight forward. "Consecutive" means "following one after the other in order." Merriam-Webster https://www. merriam-webster.com/dictionary/consecutive (last visited April 2, 2019). The Court agrees with MB Financial's position that if an account goes into overdraft status on Day 1 and remains in overdraft status on Day 2, then Day 2 is the "second" consecutive day that the account is negative, because Day 2 follows in order after the first negative-balance day. The Fee Schedule does not refer to "full business days," but "consecutive calendar days." Thus, the Fee Schedule allows MB Financial to assess CDO fees on the "second consecutive calendar day the account is negative."

Pertaining to Boone's second argument, MB Financial correctly points out that the Fee Schedule does not refer to the time of day that the bank determines whether there is an overdraft. Nor does it refer to the date on which an OD fee is deducted from the account. Instead, it solely refers to the account's negative status, the "second consecutive calendar day the account is negative." Therefore, we find the Fee Schedule unambiguous and Boone's claim implausible.

## III. Implied Covenant of Good Faith and Fair Dealing

In Count II, Boone alleges MB Financial has "breached the covenant of good faith and fair dealing in the contract through its overdraft policies and practices" ("discretion-to-pay"). Specifically, Boone claims that MB Financial "harms consumers

by abusing its contractual discretion in a number of ways which no reasonable consumer would anticipate." Illinois law, however, does not recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing. *Voyles v. Sandia Mortgage Corp.*, 751 N.E.2d 1126 (Ill. 2001); *McArdle v. Peoria Sch. Dist. No. 150,* 705 F.3d 751, 755 (7th Cir. 2013). This covenant merely aids in contractual interpretation and is not an independent source of contractual duties or liability. *See Cohn v. Guaranteed Rate Inc.*, 130 F. Supp. 3d 1198, 1210 (N.D. Ill. 2015). Therefore, Count II is dismissed with prejudice.

## IV. Illinois Consumer Fraud Act

In Count III, Boone alleges that MB Financial violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 ("ICFA"), by engaging in deceptive and unfair acts or practices stemming from the imposition of OD Fees, CDOF, and discretion-to-pay claims.

The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Siegel v. Shell Oil Co*., 612 F.3d 932, 934 (7th Cir. 2010) (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (2002)). To assert an ICFA claim, Boone must demonstrate: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel*, 612 F.3d at 934. A plaintiff

14

is entitled to recover under the ICFA where there is unfair or deceptive conduct. *Robinson*, 775 N.E.2d at 960. The Illinois Appellate Court has interpreted the statute to be disjunctive, "allowing separate claims for unfair acts or practices and deceptive acts or practices." *Sharkey v. NAC Mktg. Co., LLC*, 2012 WL 5967409, at *5 (N.D. Ill. 2012). Therefore, we analyze Boone's claim under each appropriate standard.

### A. Unfair Acts and Practices

Boone's complaint fails to allege an ICFA claim for unfair practices. In determining whether conduct is "unfair," Illinois evaluates whether the practice: "(1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers." *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*, 536 F.3d 663, 669 (7th Cir. 2008); *Robinson*, 775 N.E.2d at 960. "ICFA claims based on unfair practices are subject to Rule 8's minimum pleading requirements." *Sharkey*, 2012 WL 5967409 at *5. However, even under Rule 8, Boone must "describe how the [unfair practice] is oppressive or violates public policy. Without such a description, the complaint fails to state a cause of action." *O'Brien v. Landers*, 2011 WL 221865, at *5 (N.D. Ill. 2011).

Boone's claims are predicated on her APPSN, CDOF, and discretion-to-pay theories. Noticeably, Boone fails to articulate how any of her claims are oppressive or violate public policy. Therefore, Boone fails to plausibly allege that MB Financial conducted any unfair practice.

## B. Deceptive Acts and Practice

Boone fails to allege an ICFA claim for deceptive acts and practice. Boone argues that MB Financial engaged in deceptive acts and practices based on APPSN, CDOF, and discretion-to-pay theories. MB Financial claims that Boone fails to plausibly allege a claim because there was no element of deception between the parties. We agree.

To adequately plead a deceptive claim under the ICFA, Boone must allege: (1) a deceptive act or practice by MB Financial; (2) that MB Financial intended Boone to rely on the deception; (3) the deception occurred in the course of conduct involving trade and commerce; (4) actual damages to Boone; and (5) proximately caused by the deception. *Cozzi Iron and Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 576 (7th Cir. 2001); *Oliveria v. Amoco Oil Co.*, 776 N.E.2d 151, 169 (Ill. 2002).

Allegations of deceptive acts are subject to Rule 9(b)'s heightened pleading requirements and therefore must be pled with particularity. *O'Brien v. Landers*, 2011 WL 221865, at *4 (N.D. Ill. 2011). To satisfy Rule 9(b), "the circumstances [of the alleged misrepresentation] must be pleaded in detail. The who, what, when, where, and how…" *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1999).

We first evaluate whether Boone has plausibly alleged that MB Financial's assessment of OD fees was deceptive. Boone alleges that MB Financial's acts were deceptive because MB Financial misleadingly described its overdraft balance-calculation methods. MB Financial claims its acts were not deceptive and directs the

Court's attention to *Saunders v. Michigan Avenue National Bank*, 662 N.E.2d 602 (Ill. 1996) as persuasive authority.

We find that *Saunders v. Michigan Avenue National Bank* is persuasive authority for MB Financial's position that its assessment of OD Fees were not deceptive. 662 N.E.2d 602 (Ill. 1996). In *Saunders*, the bank imposed an overdraft charge against the plaintiff on 11 separate occasions, assessing over $200 in charges all predicated on one check that caused a $5.00 overdraft. *Id.* The Plaintiff argued that the bank's actions were deceptive because the checking account agreement did not define the term "overdraft." *Id.* The court dismissed plaintiff's ICFA claim, finding "no element of deception between the parties" because the Bank "provid[ed]" the plaintiff "with pamphlets which expressly stated that it would charge $20 per day for overdrafts" and that the plaintiff "accepted the unambiguous fee terms by opening her account." *Id.*

We found that the Checking Agreements and disclosures accurately set forth the applicable terms governing ODs. The Fee Schedule unambiguously asserts that Bank will charge $37.00 in OD fees when the "account is negative by more than $10" with a "combined maximum of 5 overdraft and returned item fees are charged per day." Boone has not alleged that she was coerced into accepting these terms, as she was free to select other banks with a variety of fees and services. *See Saunders*, 662 N.E.2d at 611. MB Financial correctly points out that Boone not only accepted MB Financial's terms by opening her account but continued to use her account in the ordinary course for years. Therefore, we find that MB Financial did not engage in a deceptive act.

Boone next alleges that MB Financial engaged in a deceptive act by prematurely assessing CDOF. Boone's claim fails because as discussed, MB Financial acted within the expressed scope of the Checking Agreements. Therefore, MB Financial's assessment of CDOF was not deceptive.

Finally, Boone alleges that MB financial engaged in a deceptive act under her discretion-to-pay claim. However, this claim fails because as explained, MB Financial provided all the necessary information concerning the OD charges, Boone accepted these terms by opening up her account, and she was free to select another bank. The Checking Agreements unambiguously allowed MB Financial to "charge … and debit from [her] account an overdraft/insufficient available funds fee as provided in [the] fee schedule" when it paid an overdraft. Boone's mere articulation that MB Financial's primary motivation was to maximize profits is not breach of good faith when MB Financial acted in accord with its contractual obligations. Therefore, Count III is dismissed.

## CONCLUSION

For the aforementioned reasons, the Court grants the motion to dismiss in its entirety.

Dated: 4/12/2019

_____
Charles P. Kocoras
United States District Judge